UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JULIAN DEUERLEIN,<br><br>                    Defendant. | CRIMINAL NO. 3:24-CR-00195<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to suppress statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) filed by Defendant Julian Deuerlein ("Deuerlein"). The motion is fully briefed, and an evidentiary hearing was held on March 19, 2025. (Doc. 28; Doc. 29). For the following reasons, the motion will be **DENIED**. (Doc. 28).

1. **BACKGROUND AND PROCEDURAL HISTORY**

The following factual background is supported by the record as established at the March 19, 2025, evidentiary hearing. On July 10, 2024, United States Magistrate Judge Joseph F. Saporito issued an arrest warrant for Deuerlein. (Doc. 29, at 2; Doc. 29-2). On July 11, 2024, Deuerlein appeared at the FBI office located at the federal courthouse in Scranton, Pennsylvania after being contacted by FBI Special Agent Ivan Torres ("Agent Torres").[1] (Doc. 29-3). By this point, Agent Torres had "loosely" discussed Deuerlein's arrest with Task

---

[1] While Deuerlein cites to testimony in the hearing transcript that supports he did understand that he was appearing at the FBI office to be arrested, the statements at issue in this case were spoken after Deuerlein was put under arrest, handcuffed, and told why he was being arrested. (Doc. 54, at 4). Nothing in the record suggests that Deuerlein was questioned or offered any incriminating statements prior to being read his Miranda rights. (Doc. 54, at 5-6).

Force Officer Christopher Orozco ("Officer Orozco"), Task Force Officer William Maynard ("Officer Maynard"), and Special Agent Austin Cento ("Agent Cento"). (Doc. 49, at 58-60; Doc. 54, at 4).

Upon Deuerlein's arrival at the FBI's office, he was arrested. (Doc. 49, at 61). He was advised that he was under arrest "in reference to Mr. Ukiri and the threatening messages," and was handcuffed. (Doc. 49, at 61). Deuerlein remained cooperative throughout this process. (Doc. 49, at 62). Deuerlein was then read his rights under *Miranda v. Arizona* by Agent Torres and Officer Maynard. (Doc. 49, at 32, 77). He subsequently signed an Advice of Rights Form dated July 11, 2024. (Doc. 29-4; Doc. 29-5; Doc. 49, at 32, 77). After the Advice of Rights Form was signed, Deuerlein was questioned by FBI agents about the events forming the basis of the charges against him in this matter. (Doc. 29, at 3-4; Doc. 49, at 30-33).

On July 30, 2024, Deuerlein was charged with three counts of Interstate Transmission of Threat to Kidnap or Injure, in violation of Title 18, United States Code, Section 875(c). (Doc. 16; Doc. 36, at 2). Deuerlein entered a not guilty plea on August 20, 2024. (Doc. 21; Doc. 36, at 2). Deuerlein filed the instant motion to suppress as well as a brief in support on September 9, 2024. (Doc. 28; Doc. 29). On October 21, 2024, the Government filed a brief in opposition. (Doc. 36). On March 19, 2025, the Court held an evidentiary hearing. On April 29, 2025, Deuerlein filed a post hearing brief. (Doc. 54). The Government filed its post hearing brief on May 1, 2025. (Doc. 55). Accordingly, the motion is ripe and ready for disposition.

2. **LEGAL STANDARD**

"The Fifth Amendment guarantees that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'" *New York v. Quarles*, 467 U.S. 649, 654 (1984).

In *Miranda v. Arizona*, the Supreme Court established that defendants' right against self-incrimination also "bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022); 384 U.S. at 466; *see also Michigan v. Tucker*, 417 U.S. 433, 440–442 (1974). Thus, the Court established a "constitutionally based" prophylactic rule that a criminal suspect must be informed that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also Fare v. Michael C.*, 442 U.S. 707, 717 (1979) ("The rule the Court established in Miranda is clear. In order to be able to use statements obtained during custodial interrogation of the accused, the State must warn the accused prior to such questioning of his right to remain silent and of his right to have counsel, retained or appointed, present during interrogation."). Unless a suspect "knowingly and intelligently waive[s] these rights and agree[s] to answer questions or make a statement," statements obtained during the interrogation must be suppressed by application of the exclusionary rule. *Miranda*, 384 U.S. at 479. As explained by the Supreme Court:

> Failure to administer Miranda warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under Miranda. . . But the Miranda presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted. Despite the fact that patently voluntary statements taken in violation of Miranda must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination.
>
> *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985); *see also United States v. Fioravanti*, 412 F.2d 407, 413-14 (3d Cir. 1969).

"In deciding a motion to suppress, the trial judge, as the fact finder, determines the credibility of the witnesses and the weight to be given to the evidence." *United States v. Moye*, 722 F. Supp. 3d 506, 511 (M.D. Pa. 2024) "The court can accept or reject a witness's testimony, assessing credibility on the following factors: demeanor and manner on the stand, ability to accurately recollect, impact of the outcome on the witness, whether the testimony supports or contradicts other evidence, and whether the testimony 'withstands a common sense test of reason and logic.'" *Moye*, 722 F. Supp. 3d at 511 (citing *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005)).

3. **DISCUSSION**

The burden of establishing that the challenged statements obtained during the FBI interrogation were taken in violation of his *Miranda* rights falls on Deuerlein. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence."). The Government bears the burden of proving by a preponderance of the evidence that no custodial interrogation took place that implicates *Miranda*. *United States v. Fachetti*, No. 1:21-CR-39, 2025 WL 510096, at *6 (W.D. Pa. Feb. 14, 2025). Here, because the record is clear that Deuerlein's statements were taken after he was read his *Miranda* rights and signed the Advice of Rights Form, and further, that Deuerlein never invoked his right to counsel or to remain silent, his motion shall be denied. (Doc. 28).

At the evidentiary hearing in this matter, the Government introduced four witnesses and multiple pieces of evidence, including Deuerlein's signed Advice of Rights Form, to support its position that Deuerlein was properly *Mirandized* before being questioned. The Advice of Rights Form states:

4

>Before you ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions without a lawyer present, you have the right to stop at any time.
>
>(Doc. 29-5).

The Advice of Rights Form also has a section labeled "Consent," which reads "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Doc. 29-5). Deuerlein signed this section of the form. (Doc. 29-5; Doc. 49, at 70).

Testimony from Agent Cento, Officer Orozco, Officer Maynard, and Agent Torres establishes that Deuerlein never requested an attorney or chose to remain silent as he was being interrogated. (Doc. 49, at 28, 30-31, 34, 42, 47, 50, 56, 59, 61; Doc. 55, at 3-6). This interrogation occurred after Deuerlein signed the Advice of Rights Form and with the exception of a small period of time, was audio and visually recorded.[2] (Doc. 49, at 12-13, 66, 71). During his cross examination of the Government's witnesses, Deuerlein did not elicit any support for his conclusion that his statements were taken in violation of his rights during the cross-examination of the aforementioned FBI agents and officers. Deuerlein did not otherwise introduce any evidence that supports his assertion that he requested the assistance of counsel

---

[2] Deuerlein notes that, after he was read his *Miranda* rights, there was a short period of time where the interview was not being recorded, due to an error on the part of the FBI agents and officers. (Doc. 49, at 66, 71; Doc. 54, at 6). However, there is no compelling evidence in the record that suggests Deuerlein requested an attorney or to remain silent during this time.

before or after he was read his rights and signed his Advice of Rights Form. (Doc. 49, at 32, 36, 50, 64, 77, 82-83). Instead, the record reflects that after Deuerlein signed the Advice of Rights, he at no point requested the assistance of counsel while being questioned by the FBI.[3] (Doc. 49, at 28, 30-31, 34, 42, 47, 50, 56, 59, 61). Deuerlein does not contest the validity of the Advice of Rights Form, does not suggest he did not understand it, does not suggest that he was coerced into signing, and does not dispute that the signature at the bottom of the form is his. (Doc. 29-5). There is no evidence or basis from which this Court could conclude Deuerlein's rights as detailed in *Miranda v. Arizona* were violated. To satisfy its obligations under *Miranda*, the Government must "provid[e] the following warnings before the interrogation begins: '[the suspect] must be warned. . . that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" *United States v. Tharrington*, No. CR 24-310, 2025 WL 952480, at *8 (E.D. Pa. Mar. 28, 2025) (quoting *Miranda*, 384 U.S. at 479). The record here reflects the Government did just that. Deuerlein's motion is therefore properly denied.

4. **CONCLUSION**

Based on the foregoing, Deuerlein's motion to suppress is **DENIED**. (Doc. 28). An appropriate Order follows.

---

[3] Deuerlein called one witness, Attorney George Gretz, who testified that he is not representing Deuerlein in any criminal matter related to the incidents underlying Deuerlein's charges and that Deuerlein had called him before he went to the FBI's office, but not during the interrogation. (Doc. 55, at 6; Doc. 49, at 102-114).

BY THE COURT:

Dated: June 9, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
United States District Judge